# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PEIKER ACUSTIC, INC. and
PEIKER ACUSTIC GMBH & CO. KG,

      Plaintiffs,

v.

PATRICK KENNEDY,

      Defendant.
_____/

Case No. 10-11378

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 27, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Plaintiffs, Peiker acustic, Inc. ("Peiker USA") and Peiker acustic GmbH & Co. KG ("Peiker Germany"), filed this lawsuit in the Michigan Circuit Court for the County of Oakland alleging that Defendant, Patrick Kennedy, published defamatory statements about them in his book, "IdeaJacked." On April 7, 2010, Defendant removed the action to this Court on grounds that the parties are diverse and the amount in controversy exceeds $75,000. Also on April 7, 2010, Defendant filed a motion to change venue to the United States District Court for the District of Colorado. While the parties were briefing that motion, Plaintiffs filed a motion to remand on May 21, 2010. Both motions have now been fully briefed and the Court heard oral argument on August 26, 2010.

**I. Facts and Procedural Background**

Defendant is a Colorado resident and the Chairman and Chief Executive Officer ("CEO") of Cellport Systems, Inc., ("Cellport"), a Colorado corporation with its principal place of business in Colorado. Cellport designs and develops technology that allows for the connection of wireless telephones and other electronic devices to the audio, power, and antenna systems of vehicles.

Peiker Germany is a German corporation with its principal place of business in Germany. Peiker USA is a wholly owned subsidiary of Peiker Germany, incorporated in Delaware with its principal place of business in Texas. Plaintiffs are involved in innovation and development of high fidelity microphones, mobile communications solutions, and related technologies. Peiker USA distributes, markets, and sells these products in the United States, whereas Peiker Germany develops and manufactures these products in Germany. Peiker USA maintains an office in Troy, Michigan, which gives direct engineering and sales support to Plaintiffs' main customers in the United States—the automakers and suppliers based in Michigan.

At some point in 2002, Cellport and Plaintiffs entered into a Global Partners License Agreement that provided for the companies to jointly market and sell products developed by Defendant and/or Cellport.[1] By 2003, this relationship began to sour with Cellport complaining that Plaintiffs were selling their own products in breach of the agreement. That

---

[1] It is actually unclear to the Court whether Peiker USA was a party to the Global Partners License Agreement. That agreement may have been between Cellport and Peiker Germany alone.

year, the Global Partners License Agreement was terminated and Cellport filed suit against Plaintiffs. In settlement of that litigation, Cellport and Peiker Germany entered into a new agreement, the 2004 License Agreement, granting Peiker Germany a license under certain Cellport patents.

Several years later, the relationship between Cellport and Peiker Germany once again began to sour. On March 18, 2009, Cellport filed suit against Peiker Germany in the Boulder County District Court in Colorado, alleging breaches of the 2004 License Agreement. Peiker Germany later removed the case to the United States District Court of the District of Colorado. That litigation ("the Cellport litigation") remains pending. *Cellport Systems, Inc. v. Peiker Acustic GMBH & Co. KG*, Case No. 09-CV-01007-MSK-MJW (*see* Def.'s Venue Mot. Ex. B).

Frustrated with his experiences as an inventor, entrepreneur, and CEO of Cellport, Defendant wrote a book detailing his and Cellport's experiences with competitors that he titled, "IdeaJacked: An Entrepreneur's Story of Innovation and Treacherous Competition in Global Markets." The book was published in the fall of 2009. In the book, Defendant describes "ideajacking" as an action in which an individual or company steals an idea protected by patent, copyright, trademark or proprietary rights; prevents an idea's legal owner from selling products based on the idea; or takes undeserved credit of another party's patented idea or invention. The book accuses Peiker[2] of "ideajacking" Defendant and

---

[2]Plaintiffs assert that the book does not always distinguish between Peiker Germany and Peiker USA in its accusations. Defendant maintains that the book refers only to Peiker Germany.

Cellport by, among other things, committing "patent crosses" and license violations.

In response to the accusations in the book, Plaintiffs filed the present defamation action. As previously noted, there are now two motions pending before the Court: Defendant's motion to change venue and Plaintiffs' motion to remand. The Court addresses Plaintiffs' motion first to ensure that the Court has subject matter jurisdiction before addressing any other issues in this case.

**II. Motion to Remand: Amount in Controversy**

Although there is diversity of citizenship between the parties, Plaintiffs contend that Defendant has not met his burden of proving that the amount in controversy is satisfied. *See* 28 U.S. C. 1332(a) (setting forth the requirements for diversity jursdiction). Specifically Plaintiffs argue that Defendant fails to establish by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000. At this stage in the litigation, Plaintiffs assert that they are unaware of the extent of their damages because Defendant has not disclosed the identities of the recipients of his book. If the book has been distributed only to the few people of whom Plaintiffs are already aware, Plaintiffs do not believe their damages will exceed $75,000. If, however, the book has been distributed to Plaintiffs' other customers and prospective customers resulting in lost business opportunities, Plaintiffs damages will exceed $75,000. Plaintiffs argue that Defendant should be required to disclose the recipients of his book to satisfy his burden regarding the amount in controversy.

Defendant, meanwhile, asserts that he has met his burden of establishing an amount in controversy in excess of $75,000 regardless of who received his book. Specifically, Defendant maintains that the cost of complying with Plaintiffs' requested injunctive relief

satisfies the jurisdictional amount and that Plaintiffs' demands for actual damages, punitive damages, and attorney fees elevates the amount in controversy to more than $75,000. In support of his argument, Defendant notes the "severity" of the factual allegations contained in Plaintiffs' complaint.

The jurisdictional amount in controversy analysis must take into account the availability of punitive damages "unless it is apparent to a legal certainty that such cannot be recovered." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 408 (6th Cir. 2007) (*quoting Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001)). Punitive damages are available for defamation actions in Michigan where the "defendant act[s] with common-law malice—in the sense of ill will or bad faith—in publishing the libel." *See Peisner v. Detroit Free Press, Inc.*, 421 Mich. 125, 137, 364 N.W.2d 600, 606 (1984). In their Complaint, Plaintiffs allege that Defendant published the allegedly defamatory statements "with knowledge" or their falsity. (Compl. ¶ 22.) If this is true, Plaintiffs may be able to recover punitive damages.

To determine whether the amount in controversy may be satisfied by the availability of punitive damages, the Court may consider verdicts and settlements in similar cases. *See Leys v. Lowe's Home Ctrs., Inc.*, No. 1:08-cv-1084, 2009 WL 514291, at *4 (W.D. Mich. March 2, 2009). In response to Plaintiffs' motion, Defendant identifies seven cases involving lawsuits arising out of defamatory statements causing injury to business reputation, two of which are Michigan Circuit Court cases. (Def. Resp. at 9.) In four of these cases, the punitive damages well exceed $75,000. For example, one of the Michigan cases involved defamation arising out of a patent dispute. (*See* Def.'s Resp. Ex. C.) The jury awarded

$375,000 in exemplary damages on the defamation claim. (*Id.*)  In the remaining three cases, the verdicts or settlements ranged from $330,000 to $2.5 million, but did not specify the exact breakdown of the awards.  Based on this evidence, the Court concludes that Defendant has satisfied his burden to demonstrate that the amount in controversy more likely than not exceeds $75,000.

In the end, Defendant need not prove that it is more likely than not that Plaintiffs will *actually recover* more than $75,000.  *See Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1278 (6th Cir. 1991).  Indeed, such a standard would place on Defendant the burden of proving Plaintiffs' claims to a legal certainty.  *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 159 (6th Cir. 1993) *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010) ( "[The 'preponderance of the evidence' test] does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement.  Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages.").  Considering the availability of punitive damages alone, Defendant has shown by a preponderance of the evidence that he is defending against claims in excess of $75,000.  Combining the availability of punitive damages with the value of other available forms of relief in this case,[3]

---

[3] The amount in controversy in this case includes, in addition to punitive damages, the value of the injunctive relief requested by Plaintiffs, actual damages, and attorney fees. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) ("The costs of complying with an injunction, whether sought by one plaintiff or many plaintiffs, may establish the amount in controversy."); Mich. Comp. Laws Ann. § 600.2911(7) (allowing for recovery of attorney fees in a defamation action); Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 376 (6th Cir. 2007) ("As a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, *unless* the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees." (emphasis added).).

the Court is convinced that the jurisdictional amount is satisfied and, therefore, denies Plaintiffs' motion to remand.

**III. Motion for Change of Venue**

In the other motion pending before the Court, Defendant seeks to have this case transferred to the United States District Court for the District of Colorado. Federal law provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, transfer pursuant to § 1404(a) requires that: "(1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and witnesses' convenience." *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001). This in turn requires that the Court consider relevant case-specific factors such as:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of processes to compel attendance of unwilling witnesses; (5) the costs of obtaining willing witnesses; (6) the practical problems of trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004) (quotation omitted).

This Court "has broad discretion to grant or deny" the present motion. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (quotation omitted). In conducting the analysis,

---

The parties dispute the values attributable to these other categories of relief, especially in regard to injunctive relief. Because the availability of punitive damages raises the amount in controversy over the jurisdictional amount, the Court need not speculate on the proper valuations. The Court merely notes that there is some value to be attributed to each form of relief, further supporting the Court's conclusion that the amount in controversy more likely than not exceeds $75,000.

though, "[t]he movant bears the burden of demonstrating that fairness and practicality strongly favor the forum to which transfer is sought." *Audi*, 341 F. Supp. 2d at 749 (quotation omitted). That showing must be made by a preponderance of the evidence. *Id.*

## A. Transferee Court

As an initial matter, this Court finds that this case could have been brought in the United States District Court for the District of Colorado. As previously noted, the parties in this litigation are diverse and the amount in controversy satisfies federal jurisdictional requirements. *See* 28 U.S.C. § 1332(a). Additionally, Defendant resides in Colorado and the conduct giving rise to the defamation claims in this case took place there, where Defendant wrote his book. *See* 28 U.S.C. § 1391(a). Thus, Defendant has satisfied the first requirement for transfer.

## B. Convenience and the Interest of Justice

The Court now turns to consider the convenience of the parties and witnesses and the interests of justice. In so doing, the Court specifically considers the factors relevant to the circumstances of this case.

### 1. The Parties' Convenience

In regard to the parties' interests, the Court first looks to Plaintiffs' choice of forum. "Generally, a plaintiff's choice of forum will be given substantial deference. A plaintiff's chosen forum, however, is not sacrosanct, and will not defeat a well-founded motion for change of venue." *Audi*, 341 F. Supp. 2d at 749. In this case, two specific circumstances limit the relevance and importance of Plaintiffs' choice of forum.

First, Plaintiffs did not choose this forum. Plaintiffs brought this action in Oakland

County Circuit Court and it came to this Court only by way of Defendant's removal. Because of this, Plaintiffs' choice of forum receives less deference. *See Hite v. Norwegian Caribbean Lines*, 551 F. Supp. 390, 394-95 (E.D. Mich. 1982).

Second, neither Peiker Germany nor Peiker USA are residents of their chosen forum. Pursuant to statute, a corporation is a resident of the states where it is incorporated and where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). Peiker Germany is a resident of a foreign state in both respects as it is incorporated and has its principal place of business in Germany. (Compl. ¶ 1.) Meanwhile, Peiker USA is incorporated in Delaware and maintains its principal place of business in Texas. (Compl. ¶ 2.) Although Peiker USA has an office in Michigan, that does not, in a legal sense, make Peiker USA a Michigan resident.

These facts diminish the importance of Plaintiffs' choice of forum and ease Defendant's burden in establishing that transfer should be favored. As another district court explained:

> The movant's burden is easier where the plaintiff has not brought suit on its "home turf" because the interest in litigating in a convenient forum is reduced. . . . Where a plaintiff chooses to litigate away from its principal place of business, the quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer necessarily will be less than in the case where plaintiff's choice of forum is highly convenient to plaintiff.

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991) (quotations and citations omitted). Therefore, Plaintiffs' selection of the State of Michigan as the location for bringing this lawsuit plays a minimal role in deciding the present motion.

On the other side of the scale for this factor is Defendant's interest in litigating this case in his state of residency. Obviously, it would be more convenient for Defendant to defend

9

this case in his home state. Furthermore, it does not appear that Plaintiffs would be significantly inconvenienced by litigating in Colorado: Peiker Germany faces intercontinental travel in either forum and is already engaged in litigation in Colorado. Peiker USA has its principal place of business in Texas, which is closer to Colorado, but is incorporated in Delaware, which is closer to Michigan. In any event, the Court observes that none of the parties—corporations on one side and a chairman and CEO of a corporation on the other—lack the resources necessary to litigate away from their home states.

**2. The Witnesses' Convenience**

"Witnesses' convenience is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)." *Thomas*, 131 F. Supp. 2d at 937. In considering this factor, though, "more important than raw numbers of witnesses living in a particular jurisdiction is the residence of the key witness or witnesses." *Id.* The witnesses to be considered may include employees of a party. *Id.* at 938-39. To assist the Court in this analysis, "the parties should provide each witness's name and an outline of what material testimony that witness would provide." *Id.* at 937.

The parties, not surprisingly, disagree as to the most convenient forum for the witnesses in this case. Plaintiffs claim that they will use testimony from a "significant number of witnesses living and working in Michigan." (Pls.' Resp. to Venue Mot. at 7.) Plaintiffs assert that Peiker USA's customers that would have seen and been impacted by the alleged defamation are the various automakers and suppliers primarily located in Michigan. Plaintiffs specifically identify two Michigan residents who are expected to testify as to Defendant's publication and distribution of the alleged defamation as well as to damages

suffered. (*Id.* at 8.) Meanwhile, Defendant contends that the bulk of the witnesses necessary to this case reside in Colorado. Defendant generally refers to two groups residing in Colorado that have testimony relevant to the defamation claims: (1) a group of eight individuals that assisted Defendant in the preparation and publication of his book, and (2) a group of three individuals employed by or associated with Cellport that have knowledge regarding the veracity of the allegedly defamatory statements in Defendant's book. (Def.'s Venue Mot. Ex. D ¶¶ 5, 15.) Additionally, Defendant, a Colorado resident, expects to testify in his own defense. (*See* Def.'s Venue Mot. at 9.)

Plaintiffs' defamation claims require proof of: "(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm . . . or the existence of special harm caused by the publication . . . ." *Andrews v. Prudential Sec., Inc.*, 160 F.3d 304, 308 (6th Cir. 1998). As such, the two Michigan witnesses identified by Plaintiffs appear material to the present litigation because they will give testimony establishing publication and harm. At the same time, however, Defendant's three Colorado witnesses associated with Cellport also appear material insofar as they possess information relevant to the veracity of Defendant's statements.[4] *See id.* ("[T]ruth is a complete defense to a defamation action."). If anything, then, the convenience of the witnesses slightly favors transfer to Colorado.

---

[4] It is not clear to the Court, and Defendant failed to explain, what contributions could be expected from the group of eight witnesses that assisted Defendant in the preparation and publication of the book. There can be no real dispute as to the content of the allegedly defamatory statements where, as here, they appear in a published book.

11

**3. Practical Problems and the Interest of Justice**

Finally, there is the ongoing Cellport litigation in Colorado. Defendant asserts that the outcome of the Cellport litigation will determine the veracity of the allegedly defamatory statements in the present action. As such, Defendant maintains that the witnesses in that litigation will also be witnesses in the present case, making it more convenient for all involved to have the cases pending in a single forum.

Plaintiffs argue, meanwhile, that the Cellport litigation involves entirely different issues not relevant to the instant case. In defense of their position, Plaintiffs observe that: (1) the Cellport litigation involves different parties (Defendant's company rather than Defendant as an individual and Peiker Germany alone as opposed to Peiker Germany and Peiker USA); and (2) the Cellport litigation involves different claims and, more specifically, does not include claims for defamation. These observations are not dispositive as to the connection between the cases.

As an initial matter, the Court notes that cases may be related in a manner so as to make a single venue preferable even where there are disparities between the named parties to the lawsuits. *See Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Next, the allegations contained in Plaintiffs' Complaint betray Plaintiffs' claim that the Cellport litigation is unrelated. In the Complaint to the present lawsuit, Plaintiffs allege:

> 13. In 2009, Cellport initiated litigation against Peiker . . . , claiming that Peiker's sales of additional products independently developed by Peiker breached the 2004 License Agreement ("the 2009 lawsuit"). . . .
> 14. In the fall of 2009 Kennedy published his Book "IdeaJacked."
> . . . .
> 16. Kennedy references Plaintiffs throughout his Book "IdeaJacked," falsely accusing them of being "IdeaJackers" . . . .

> 17. For example, Kennedy in his Book states:
>
>     . . . .
>
>     F. ". . . I saw what looked like another PEIKER license violation . . . ." (Page 310.)
>
>     . . . .
>
>     H. "Being IdeaJacked, either by discovering a brand new violator or finding current licensee under-reporting, is very disheartening." (Page 311.)
>
>     I. "I could use Ralph's technical assistance to help analyze and document the specifics of what I believed were the Peiker patent crosses and license violations."[5] (Page 312.)
>
>     . . . .
>
> 23. Kennedy is thus maliciously and negligently publishing false and defamatory statements regarding Plaintiffs.

As such, Plaintiffs acknowledge that Peiker Germany is being sued in Colorado for breach of a license agreement.[6] Furthermore, Plaintiffs allege that they are being defamed by statements that are reflective of the Cellport litigation—statements that Peiker committed license violations. In other words, the conduct giving rise to the Cellport litigation in Colorado is the same conduct that is the subject of the allegedly defamatory statements. The veracity of these statements and, in turn, the validity of the claims in the Cellport litigation are relevant to the outcome of this case. *See Andrews*, 160 F.3d at 308. Therefore, the Court concludes that practical problems and the interests of justice strongly favor transfer to Colorado.

Weighing all relevant factors, the Court is convinced that fairness and practicality strongly favor transfer to Colorado. Though the convenience of the parties and the witnesses

---

[5] The Court notes that Ralph Poplawsky is identified by Defendant as one of the Colorado witnesses that will testify in this case.

[6] This is further supported by the content of the Complaint in the Cellport litigation. (*See* Def.'s Venue Mot. Ex. B.)

does not heavily favor Colorado, it is significant that none of the parties in this case are Michigan residents while several material witnesses and the defendant are Colorado residents. Most significant, however, is the existence of related litigation in the United States District Court for the District of Colorado. Given the substantial overlap of that litigation with the present case, it would be most efficient and serve the interests of justice to have these cases litigated in a single forum. The Court therefore grants Defendant's motion for change of venue.

**IV. Conclusion**

Contrary to Plaintiffs' assertions, Defendant has satisfied his burden in establishing that the amount in controversy in this case exceeds $75,000. Additionally, Defendant has convinced the Court that fairness and practicality strongly favor transfer of this litigation to the United States District Court for the District of Colorado where Defendant is a resident and related litigation remains pending. Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Remand is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Change of Venue is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court transfer this case to the United States District Court for the District of Colorado.

                                            s/ PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copy to:
Frederick A. Acomb, Esq.
Mary K. Griffith, Esq.
Michael J. O'Shaughnessy, Esq.